UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENCORE GROUP, LLC | CIVIL ACTION |
| VERSUS | NO. 21-1930 |
| ANN KING | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is plaintiff the Encore Food Group, LLC's ("Encore") motion for a court-appointed physician pursuant to Rule 706 of the Federal Rules of Evidence.¹ Defendant and counterclaimant Ann King opposes the motion.² For the following reasons, the Court denies the motion.

## I. BACKGROUND

This case arises from a fall on the gangplank of the M/V SHEILA BORDELON. On February 3, 2020, King was working for Encore aboard the M/V SHEILA BORDELON, a vessel owned and operated by Bordelon Marine, LLC ("Bordelon").³ Plaintiff asserts that as she was exiting the vessel, the gangway suddenly shifted beneath her, causing her to fall and

---

1   R. Doc. 10.
2   R. Doc. 12.
3   R. Doc. 10-2 at 3-4 (Deposition of Ann King, 17:9-18:24).

sustain injuries.[4]  On July 7, 2020, King filed suit against Bordelon, raising claims of negligence and unseaworthiness.[5]

Immediately after the fall, King reported pain in her knee, back, and shoulder, and was taken to a doctor in Golden Meadow, Louisiana.[6]  After examining King, the doctor released her, but advised her to seek immediate care if her symptoms worsened.[7]  The next day, King went to see Dr. William St. Martin.  After Dr. St. Martin released King to return to work a few weeks later, King sought alternative care with the physicians at Gulf Coast Orthopedic in Houma, Louisiana.[8]

At Gulf Coast Orthopedic, King saw Dr. Mike Haydel for the pain in her right knee, and saw Dr. Christopher Cenac, Jr. for her lower back pain.[9]  In March and April of 2020, Dr. Cenac ordered physical therapy and epidural steroid injections for King's lumbar spine.[10]  After King continued to complain of pain in her lower back and right leg, Dr. Cenac performed a right-sided L4-5 lumbar microdiscectomy on September 8, 2020.[11]  As of the

---

[4]   R. Doc. 10-1 at 2.
[5]   R. Doc. 1 ¶ V.
[6]   R. Doc. 10-2 at 5, 7 (Deposition of Ann King, 57:14-25, 59:15-19).
[7]   R. Doc. 12-1 at 1 (Exhibit 1).
[8]   R. Doc. 12 at 2.
[9]   R. Doc. 10-3 at 1 (Patient Visit Note, Mar. 25, 2020).
[10]  *Id.* at 3; R. Doc. 10-4 at 1-2 (Patient Visit Note, Apr. 20, 2020).
[11]  R. Doc. 10-7 at 1 (Operative Report).

end of November of 2020, Dr. Cenac's records state that King was "doing well," and that King had reported that physical therapy had "substantially helped her."[12] Dr. Cenac continued King on outpatient physical therapy, and cleared her to "return back to work on light duty."[13]

On January 11, 2021, King saw Dr. Cenac for a follow-up. King reported that physical therapy had "much improved" the pain in her leg, but that she continued to suffer from pain in her back.[14] Following appointments in February and April, Dr. Cenac recommended that King participate in "no work," and noted that King reported more persistent leg and lower back pain.[15] Following an appointment in April 2021, Dr. Cenac ordered an MRI with contrast, and observed that King had "an excellent description of L5 nerve root type pathology."[16] On May 19, 2021, Dr. Cenac reviewed King's MRI, which he interpreted as showing "continued disc herniation at L5-S1 with bilateral foraminal narrowing[,] with postsurgical changes at L5-S1 with foraminal stenosis and Bertolotti syndrome."[17] He also observed that King had "transitional anatomy at the L5-S1 region with sacroiliac spinous process

---

[12]  R. Doc. 10-8 at 1 (Patient Visit Note, Nov. 25, 2020).
[13]  *Id.* at 2.
[14]  R. Doc. 12-5 at 31 (Patient Visit Note, Jan. 11, 2021).
[15]  *Id.* at 51 (Patient Visit Note, April 7, 2021); *see also id.* at 43 (Employee Work Release Form, Feb. 24, 2021).
[16]  *Id.* at 51 (Patient Visit Note, Apr. 7, 2021).
[17]  R. Doc. 10-11 at 2-3 (Patient Visit Note, May 19, 2021).

abnormalities."[18] Based on these findings, Dr. Cenac recommended that King undergo a lumbar fusion at L5-S1.[19]

In April of 2021, Bordelon retained neurosurgeon Dr. Everett Robert to conduct an independent medical evaluation ("IME") on King. On April 23, 2021, after examining King and reviewing her medical records, Dr. Robert opined that King had reached maximum medical improvement ("MMI"), and that he did not recommend "any future treatment for her lumbar spine with regards to any type of invasive treatment including injections."[20] In June of 2021, Dr. Robert provided an addendum to his initial IME after he reviewed King's MRI from May 12, 2021, as well as Dr. Cenac's recommendation that King undergo a lumbar fusion.[21] In his addendum, Dr. Robert opined that, based on King's MRI and complaints, he did not recommend "any type of invasive procedure," and stated that he did "not see any evidence of nerve root impingement or re-herniation."[22]

King then demanded that, as part of Encore's cure obligation, Encore cover the medical expenses of the lumbar fusion recommended by Dr. Cenac. In response, Encore retained orthopedic surgeon, Dr. Andrew Todd, to

---

18 *Id.*
19 *Id.* at 3.
20 R. Doc. 10-10 at 1-3 (Independent Medical Exam).
21 R. Doc. 10-12 at 1 (Addendum).
22 *Id.*

4

provide a second medical opinion.[23] After examining King and reviewing her records, Dr. Todd provided his second medical opinion on September 8, 2021. He stated that:

> In regards to the recommended anterior posterior lumbar fusion, I have some reservations. First, this patient has evidence of nonorganic findings on examination and symptom amplification. Before embarking on any further invasive procedures, I would recommend psychological and psychiatric clearance because of these findings . . . . If the patient is psychologically or psychiatrically cleared, has positive EMG nerve conduction findings and relief from a selective nerve root block, then and only then, would I consider the patient to be a candidate for lumbar fusion at L5-S1. Otherwise, I believe she is at maximum medical improvement and should undergo a functional capacity evaluation and return to work in some capacity.[24]

On October 21, 2021, Encore filed this declaratory action against King, seeking a judgment that Encore not be found liable for any additional past, present, or future maintenance and cure benefits under general maritime law.[25] King filed an answer and counterclaim, requesting past, present, and future payments of "any and all" maintenance and cure benefits, and that if Encore "fail[s] to honor its maintenance and cure obligations, [that King] is entitled to attorney's fees, punitive damages, and an additional

---

[23] R. Doc. 10-1 at 4.
[24] R. Doc. 10-13 at 2-6 (Second Medical Opinion).
[25] *Id.* ¶ XI.

compensatory award for any acts of negligence."[26] King also alleged a claim for punitive damages under general maritime law, regarding any arbitrary and/or unreasonable failure by Encore to pay maintenance and cure benefits.[27]

On December 29, 2021, Encore filed the present motion for a court-appointed medical expert. Encore asserts that, "[b]ecause of the discrepancies in the opinions of the three physicians, an IME by the Court-appointed physician, prior to the lumbar fusion, is necessary to determine whether the surgery is medically warranted and falls under Encore's cure obligation."[28] In response, plaintiff represents that Dr. Todd's report was submitted to King's treating physician, Dr. Cenac, and that Dr. Cenac agreed to have plaintiff undergo a psychological evaluation and EMG before moving ahead with the lumbar fusion.[29] Plaintiff underwent a psychological evaluation with Dr. Lauren Rasmussen on December 22, 2021, and underwent an EMG on January 18, 2022.[30] At this point, Encore states that it has not had the opportunity to have Dr. Todd review the results of King's EMG, and that it has not received a supplemental report addressing the

---

[26] R. Doc. 7 ¶ 9.
[27] *Id.* ¶ 10.
[28] R. Doc. 10-1 at 6.
[29] R. Doc. 12 at 5.
[30] *Id.*

6

EMG's results from Dr. Cenac.[31] Plaintiff now asserts that, because her physician is following Dr. Todd's recommendations, there are "few, if any, conflicting opinions," thus making a court-appointed expert unnecessary.[32]

The Court considers the parties' arguments below.

## II. LEGAL STANDARD

Rule 706(a) of the Federal Rules of Evidence states that:

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

Fed. R. Evid. 706(a). The Fifth Circuit has explained that Rule 706 "confers on a district court the discretionary power to appoint an expert witness on the court's own motion or on the motion of any party." *Fugitt v. Jones*, 549 F.2d 1001, 1006 (5th Cir. 1977). And while a court may appoint an expert "to assist in its own understanding of the issues," it may not appoint an expert "for the sole benefit of a party." *Borden v. United States*, 537 F. App'x 570, 575-76 (5th Cir. 2013) (per curiam); *see also Hannah v. United States*, 523

---

[31] R. Doc. 17 at 1-2.
[32] *Id.* at 10.

F.3d 597, 600 (5th Cir. 2008) ("Rule 706 contemplates the appointment of an expert to aid the court." (internal citation omitted)).

Although the standard is discretionary, courts may take into account the following factors when deciding whether to appoint an expert witness: (1) whether expert testimony will be "necessary or significantly useful for the trier of fact to comprehend a material issue in a case;" (2) whether the parties have produced evidence that "demonstrates a serious dispute that could be resolved or understood through expert testimony;" (3) whether certain circumstances limit the "effectiveness of the adversary process;" and (4) whether the "legal basis of plaintiff's claim entitles him to special consideration by the courts." *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1185 (E.D. Cal. 2011) (summarizing circuit court case law analyzing appropriate factors for district courts to consider in appointing an expert witness under Rule 706); *see also Self v. United States*, No. 18-666, 2020 WL 1666395, at *6 (N.D. Tex. Apr. 3, 2020), *aff'd*, No. 20-10388, 2022 WL 510168 (5th Cir. Feb. 21, 2022) (noting that the court's discretion to appoint an expert may be "informed by such factors as the complexity of the matters to be determined and the fact-finder's need for a neutral, expert view").

## III. DISCUSSION

It is undisputed that King is properly considered a seaman within the meaning of the Jones Act, and thus has a right to maintenance and cure.[33] *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 41-42 (1943). Accordingly, King is entitled to receive maintenance and cure from Encore until she reaches maximum medical improvement ("MMI"). *See Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987) (explaining that the right to maintenance and cure benefits terminates when the seaman reached MMI, as defined by a "medical, not . . . judicial, determination of permanency"). A seaman reaches MMI when it appears "probable that further treatment will result in no betterment in the claimant's condition." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996) (citations omitted).

In determining whether a seaman is owed maintenance and cure, a "Jones Act employer is entitled to investigate a seaman's claim." *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005). But when such an investigation results in "ambiguities or doubts, they are to be resolved in favor of the seaman." *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962). That said, a "seaman's right to maintenance and cure [must be] balanced with his employer's interests by allowing the employer to

---

33 R. Doc. 1 ¶ III.

9

investigate and reasonably withhold payment." *In re 4-K Marine, L.L.C.*, 914 F.3d 934, 938-39 (5th Cir. 2019). In cases, such as this one, where there are conflicting diagnoses and prognoses of various physicians, there is a question to be determined by the trier of fact as to whether the seaman is entitled to maintenance and cure benefits. *See Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79-80 (5th Cir. 1990).

The premise of Encore's motion is that an IME by a court-appointed physician is necessary because there are discrepancies among the opinions of the three physicians.[34] The Court does not find the appointment of a fourth expert warranted. "[T]he mere fact that the parties' retained experts have expressed divergent opinions does not necessarily warrant that the Court appoint an expert to aid in resolving the conflict." *Mallard Bay Drilling, Inc. v. Bessard*, 145 F.R.D. 405, 406 (W.D. La. 1993); *see also Brown v. Cenac Towing Co., Inc.*, No. 09-105, 2009 WL 3378658, at *2 (E.D. La. Oct. 14, 2009) (finding that an independent expert was unnecessary when the parties presented "contradictory factual evidence" regarding the medical advice that plaintiff received); *Oklahoma Natural Gas Co. v. Mahan & Rowsey, Inc.*, 786 F.2d 1004, 1007 (10th Cir. 1986) ("[T]hat the parties' experts have a divergence of opinion does not require the district court to

---

34  R. Doc. 10-1 at 6.

appoint experts to aid in resolving such conflicts."). And, Encore has not shown how the appointment of a fourth expert will help the trier of fact understand the allegedly conflicting testimony about plaintiff's surgery. *See Jacobs v. LeBlanc*, 639 F. App'x 252, 253 (5th Cir. 2016) (per curiam) (affirming the district court's denial of plaintiff's motion to appoint a medical expert when plaintiff "failed to show that the appointment would aid the court or the jury in understanding his claims or the evidence"). Courts regularly decide cases with conflicting testimony from medical professionals without the appointment of an independent expert. This is particularly true when, as here, "the experts retained by the parties [and plaintiff's treating physician] are well qualified and capable of presenting sufficient information to permit a just resolution of the pending issue." *Mallard*, 145 F.R.D. at 406. And the Court notes that the parties are "free at trial to examine and cross-examine the experts, testing their theories and reasoning, such that a [finder of fact] will be able to decide the issues." *Hiern v. Sarpy*, 161 F.R.D. 332, 336 (E.D. La. 1995).

Furthermore, each of the opining physicians bases his recommendation, in part, on the degree of pain reported by King.[35] To the

---

35    *See, e.g.*, R. Doc. 10-10 at 1 (Independent Medical Exam); R. Doc. 10-13 at 2, 4 (Second Medical Opinion); R. Doc. 10-11 at 2 (Patient Visit Note, May 19, 2021).

11

extent that King's testimony as to the degree of her pain raises credibility issues, this is well-trodden ground for a trier of fact. A fact finder may reject an expert's opinion if it rejects the factual underpinning of the opinion, regardless of whether it believes that the expert's conclusion would have been correct if those facts were true. A fourth expert is not necessary to assist the trier of fact in resolving issues of King's credibility.

Moreover, it is not apparent from the state of the record that Encore has been presented with three conflicting medical opinions. Encore's expert, Dr. Todd, did not provide a definitive opinion as to the necessity, *vel non*, of the lumbar fusion, and opined that King may be a candidate for the lumbar fusion if she met certain conditions.[36] Since that time, King represents that her treating physician, Dr. Cenac, has agreed with Dr. Todd that additional testing is needed to determine whether invasive treatment is necessary.[37] Further, Dr. Cenac has arranged both a psychological evaluation and an EMG for King.[38] To date, the record does not reflect Dr. Todd's ultimate conclusion as to whether, at this juncture, the surgery is warranted in light of the results of King's additional testing.[39] Indeed, the record does not

---

36     R. Doc. 10-13 at 6 (Second Medical Opinion) (emphasis added).
37     R. Doc. 12 at 5.
38     *Id.*
39     R. Doc. 17 at 6-7.

reflect whether Dr. Cenac still recommends the procedure either.[40] Thus, the extent of any conflict in the opinions among the three physicians is not apparent from the record. And, as noted above, even if such a conflict were to exist, it would not warrant the appointment of an independent expert.

In sum, the Court finds that an independent fourth opinion is unnecessary here, given that Dr. Cenac, Dr. Robert, and Dr. Todd are well qualified and capable of aiding a trier of fact in deciding whether King has reached MMI, and thus whether a lumbar fusion is covered under Encore's cure obligation. Accordingly, the Court declines to exercise its discretionary power to appoint an independent medical expert.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Encore's motion for the appointment of an independent medical expert under Rule 706.[41]

New Orleans, Louisiana, this __15th__ day of March, 2022.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[40] *Id.*
[41] R. Doc. 10.

13